| | |
|---|---|
| SHAWN TELLADO, | : |
| | : |
| Petitioner, | : |
| | : |
| v. | :    No. 3:09cv1572 (MRK) |
| | : |
| UNITED STATES OF AMERICA, | : |
| | : |
| Respondent. | : |

## MEMORANDUM OF DECISION

This is a difficult case because it places the societal interest in finality of judgments against the possibility of a shorter sentence for the Petitioner, Shawn Tellado. In the end and for the reasons discussed below, the Court believes that the societal interest in finality overcomes Mr. Tellado's personal interest in a shorter sentence.

Pending before the Court is Mr. Tellado's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 [doc. # 1]. On September 10, 2007, Mr. Tellado was sentenced as a career offender for conspiracy to possess with intent to distribute, and to distribute, 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846. Mr. Tellado's sentence was calculated according to the United States Sentencing Commission Guidelines ("the Guidelines") in effect on November 1, 2006 based on an adjusted offense level of 31 and criminal history category of VI, as applied to a career offender under § 4B1.1 of the Guidelines. The sentence Mr. Tellado received – 188 months imprisonment followed by five years of supervised release – was at the low end of that Guidelines range.

Mr. Tellado was classified as a career offender based on his plea agreement, in which he agreed that he was a career offender under § 4B1.1 of the Guidelines, and on the conclusion in

the Presentence Report ("PSR") that Mr. Tellado had two prior convictions for controlled substance offenses – specifically two convictions for sale of narcotics under § 21a-277(a) of the Connecticut General Statutes. Each of Mr. Tellado's two prior convictions was the result of a guilty plea pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970). An *Alford* plea allows a defendant to plead guilty without confirming the factual basis for his plea. *See id.* at 37. Mr. Tellado did not appeal his sentence, and it became final on September 24, 2007. *See* Fed. R. App. P. 4(b)(1)(A); *Moshier v. United States*, 402 F.3d 116, 118 (2d Cir. 2005) (per curiam) ("We . . . hold that, for purposes of § 2255 motions, an unappealed federal criminal judgment becomes final when the time for filing a direct appeal expires.").

On September 18, 2008, the Second Circuit issued its decision in *United States v. Savage*, 542 F.3d 959 (2d Cir. 2008). In *Savage*, the Second Circuit held that the appellant's previous conviction under Connecticut General Statues § 21a-277(b) – entered pursuant to an *Alford* plea – was not a conviction for a "controlled substance offense" as that term is defined in § 4B1.2(b) of the Guidelines. *See id.* at 960. The Guidelines definition of a "controlled substance offense" provides, in pertinent part:

> The term "controlled substance offense" means an offense under . . . state law . . . that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance . . . or the possession of a controlled substance . . . with intent to manufacture, import, export, distribute or dispense.

U.S.S.G. § 4B1.2(b). Application Note 1 to § 4B1.2 further provides that a controlled substance offense "include[s] the offenses of aiding and abetting, conspiring, and attempting to commit such offenses." *Id.* cmt. n.1. As the *Savage* court explained, "a mere offer to sell, absent possession, does not fit within the Guidelines' definition of a controlled substance." *Savage*, 542 F.3d at 965 (quotation marks and citation omitted). "Because a 'sale' under Connecticut law includes a mere offer to sell drugs," the Second Circuit concluded, a prior conviction that

2

resulted from a guilty plea to "sale" of a controlled substance under Connecticut General Statutes § 21a-277(b) does not qualify as a conviction for a controlled substance offense under the Guidelines unless the sentencing court determines that the defendant necessarily pled guilty to exchanging drugs for money. *Id.* at 967.[1]

For the purposes of determining whether a defendant's plea necessarily rested on the elements of a "controlled substance offense," as that predicate offense is defined in the Guidelines, a sentencing court is limited to "the terms of the charging document, the terms of the plea agreement or transcript of colloquy between judge and defendant [in the prior case] in which the factual basis for the plea was confirmed by the defendant, or some other comparable judicial record of [that] information." *Shepard v. United States*, 544 U.S. 13, 26 (2005); *see Savage*, 542 F.3d at 966. Because Mr. Tellado entered *Alford* pleas to charges that were not limited to actual sale of narcotics, the Court did not have a basis to find that his prior convictions constituted controlled substance offenses under the Guidelines.

Mr. Tellado filed the pending § 2255 petition on September 25, 2009. In light of *Savage*, Mr. Tellado's classification as a career offender and his consequent sentence were incorrect. Because Mr. Tellado had 17 criminal history points, he would have been in Criminal History Category VI even if he had not been classified as a career offender. *See* Sentencing Tr. at 8:13-15. But the applicable base offense level would have been 26 rather than 34, and Mr. Tellado's adjusted offense level would have been 23 rather than 31. *See* Plea Agreement, Ex. 1 to

---

[1] Section 21-277(a) of the Connecticut General Statutes establishes penalties for illegal manufacture, distribution, sale, prescription, or dispensing of "any controlled substance which is a hallucinogenic substance other than marijuana, or a narcotic substance." Conn. Gen. Stat. § 21-277(a). Section 21-277(b) establishes penalties for illegal manufacture, distribution, sale, prescription, or dispensing of "any controlled substance, except a narcotic substance, or a hallucinogenic substance other than marijuana." *Id.* § 21-277(b).

Supplemental Mem. in Opp'n [doc. # 18-1] at 3. Thus, if Mr. Tellado's Guidelines sentence were recalculated in light of *Savage*, he would face a total sentence of between 92 and 115 months imprisonment, followed by three years of supervised release. The Government acknowledges that "*Savage* is not barred from retroactive application on habeas review" by *Teague v. Lane*, 489 U.S. 288 (1989), and its progeny. Supplemental Mem. in Opp'n [doc. # 18] at 9. The Government thus concedes "the potential retroactivity of *Savage*." *Id.* at 11.

However, even if *Savage* is potentially retroactive, in order to reach the question of what Mr. Tellado's sentence would be if it were recalculated in light of *Savage*, the Court would have to do serious violence to the finality standards that govern § 2255 petitions. The Government has offered two broad reasons why the Court should not re-sentence Mr. Tellado. First, Mr. Tellado's petition was simply filed too late – outside the one-year period of limitation imposed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See* 28 U.S.C. § 2255(f). Second, as part of his plea agreement, Mr. Tellado waived his right to appeal or collaterally attack any sentence that did not exceed 188 months imprisonment. The Court finds that Mr. Tellado's petition should be denied on either of these grounds, for reasons that follow.[2]

---

[2] In its Supplemental Memorandum in Response to Petitioner's § 2255 Motion [doc. # 18], the Government also argues that Mr. Tellado's challenge to his sentence is barred because it is a non-constitutional claim that he did not raise on direct appeal. *See, e.g.*, *Werber v. United States*, 149 F.3d 172, 177 n.4 (2d Cir. 1998) ("[C]ollateral attack on a final judgment in a criminal case is generally available under § 2255 only for constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in complete miscarriage of justice.'" (quotation marks and citation omitted)). Mr. Tellado argues that the Government waived that argument by not raising it in its initial response to Mr. Tellado's § 2255 petition. Because the Court finds that Mr. Tellado's claim fails on the basis of its untimeliness and Mr. Tellado's waiver of his right to collaterally attack his sentence, the Court need not address the Government's additional procedural default argument and Mr. Tellado's counterarguments.

# I.

The Second Circuit has stated that "the scope of review on a § 2255 motion should be 'narrowly limited' in order to preserve the finality of criminal sentences and effect the efficient allocation of judicial resources." *United States v. Graziano*, 83 F.3d 587, 590 (2d Cir. 1996) (citations omitted). In this case, the central AEDPA principle of finality trumps error in the career offender calculation. *Cf. Jenkins v. Greene*, 630 F.3d 298, 305 (2d Cir. 2010) (acknowledging that the court's holding "prevent[ed] [the petitioner] from challenging an extremely severe sentence that may well have been the result of an ineffective attorney," and explaining that such an outcome "is the consequence of Congress's decision to impose a limitations period on petitions for habeas corpus").

"[AEDPA] had among its goals to prevent undue delays in federal habeas review." *Wims v. United States*, 225 F.3d 186, 189 (2d Cir. 2000) (quotation marks and citation omitted). Under AEDPA, "[a] [one]-year period of limitation shall apply to a motion under [§ 2255]." 28 U.S.C. § 2255(f). Ordinarily, the period of limitation begins to run on "the date on which the judgment of conviction becomes final." *Id.* § 2255(f)(1). In special circumstances, AEDPA provides for the limitations period to run from a later date. *See id.* § 2255(f)(2)-(4). Because Mr. Tellado's conviction became final on September 24, 2007, the Government argues that AEDPA's one-year limitations period expired on September 24, 2008. Mr. Tellado's § 2255 petition was filed over *two* years after his conviction became final, on September 25, 2009. Mr. Tellado argues that the Court should deem his petition timely either on the basis that his petition rests on facts that became available to Mr. Tellado only after his conviction became final – one of the special situations recognized by AEDPA, *see id.* § 2255(f)(4) – or by applying a principle of equitable

tolling. However, neither AEDPA's provision for petitions based on newly discovered facts nor a principle of equitable tolling applies to Mr. Tellado's situation.

## A.

Although AEDPA's one-year limitations period usually runs from the date on which a conviction becomes final, if a § 2255 petition is based on facts discovered after the date on which the conviction became final, then the one-year limitations period begins to run from "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(f)(4)  Mr. Tellado argues that the Second Circuit's decision in *Savage* created a new "fact" that Mr. Tellado could not have reasonably discovered until "at least several months after September 18, 2008."  Movant's Mem. Re: Timeliness and Waiver [doc. # 19] at 6.

Contrary to Mr. Tellado's arguments, the change in the law occasioned by *Savage* did not create a new "fact" for the purposes of § 2255(f)(4). A "fact" is defined for legal purposes as "[an] actual or alleged event or circumstance, as distinguished from its legal effect, consequence, or interpretation." *Black's Law Dictionary* (9th ed. 2009) at 669. As an alleged event or circumstance, a fact is "subject to proof or disproof." *Johnson v. United States*, 544 U.S. 295, 307 (2005). For instance, the Supreme Court has held that for the purposes of § 2255(f)(4), the existence or vacatur of a prior conviction is "subject to proof or disproof like any other factual issue." *Id.* In contrast, the Second Circuit's holding in *Savage* is not subject to empirical proof or disproof – it is the abstract legal conclusion of a particular appellate court. The *Savage* court's conclusion that Connecticut General Statutes § 21a-277(b) "criminalizes some conduct that falls outside the Guidelines' definition" of a controlled substance offense, *Savage*, 542 F.3d at 965, merely introduced a new legal interpretation. As the Ninth Circuit has noted, for the purposes of

AEDPA's one-year limitations period, there is a crucial difference between "[a] state-court decision . . . in the petitioner's *own case*" that "directly eliminated [the petitioner's] legal status as a convict," and a decision that "merely establish[ed] an abstract proposition of law." *Shannon v. Newland*, 410 F.3d 1083, 1088 (9th Cir. 2005) (emphasis in original).

The "facts supporting the claim . . . presented" by Mr. Tellado, *see* 28 U.S.C. § 2255(f)(4), include the content of the charges in the cases that led to his state court convictions and Mr. Tellado's failure to admit that he exchanged drugs for money during the plea colloquies in those cases or in his plea agreements. *See* Movant's Mem. Re: Timeliness and Waiver [doc. # 19] at 2 (explaining why "[t]he convictions that triggered the career offender enhancement at Mr. Tellado's sentencing in 2007 were misapplied"). The Second Circuit's decision in *Savage* did not create a "fact" supporting Mr. Tellado's claim, but rather established the legal ground for his claim.

As the Government notes in its brief, a separate provision of § 2255 addresses the issue of how a court decision that articulates a new legal ground for a petitioner's claim might affect the one-year limitations period: paragraph (f)(3) states that the one-year period of limitation may begin to run upon judicial recognition of a right "if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2255(f)(3). Because paragraph (f)(3) explicitly allows the one-year limitations period to be triggered by a Supreme Court ruling that newly recognizes the right asserted by a petitioner, interpreting paragraph (f)(4) to apply to triggering events of that sort would render redundant the language in paragraph (f)(3). "A basic canon of statutory interpretation . . . is to avoid readings that 'render statutory language surplusage' or 'redundant.'" *Sacirbey v. Guccione*, 589 F.3d 52, 66 (2d Cir. 2009) (citation omitted). By addressing the possibility of federal court rulings triggering

the start of AEDPA's one-year limitations period in § 2255(f)(3), and by limiting the reach of § 2255(f)(3) to decisions by the Supreme Court, Congress "impliedly rejected the notion that . . . decisions taken from the courts of appeal . . . could trigger" the alternative one-year period. *E.J.R.E. v. United States*, 453 F.3d 1094, 1098 (8th Cir. 2006).

Indeed, each circuit that has considered the issue has found that a legal decision that does not change any part of the petitioner's own criminal history constitutes a ruling of law and does not create a new factual predicate for a federal habeas claim. *See Lo v. Endicott*, 506 F.3d 572, 575-76 (7th Cir. 2007); *E.J.R.E.*, 453 F.3d at 1097-98; *Shannon*, 410 F.3d at 1089. Other circuits, while not addressing that issue directly, have explained that § 2255(f)(4) does not provide for AEDPA's one-year limitations period to begin to run upon a prisoner's recognition of a new *legal* ground for a § 2255 petition. *See United States v. Collins*, 364 F. App'x 496, 498 (10th Cir. 2010) (order denying certificate of appealability) ("Section 2255(f)(4) speaks to discovery of facts supporting a claim, not a failure to appreciate the legal significance of those facts."); *Barreto-Barreto v. United States*, 551 F.3d 95, 99 n.4 (1st Cir. 2008) (noting that "the discovery of a new legal theory does not constitute a discoverable 'fact' for the purposes of § 2255(f)(4)"); *United States v. Pollard*, 416 F.3d 48, 55 (D.C. Cir. 2005) (noting that for the purposes of §2255(f)(4), "time begins when the prisoner knows (or through due diligence could discover) the important facts, not when the prisoner recognizes their legal significance" (quoting *Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000) (quotation marks omitted))).

In his brief, Mr. Tellado cites *Rios-Delgado v. United States*, 117 F. Supp. 2d 581 (W.D. Tex. 2000), for the proposition that a federal appellate court decision that recognizes a new legal ground on which to challenge a prisoner's sentence may trigger the one-year limitations period under § 2255(f)(4). To the extent that the district court in *Rios-Delgado* concluded that the

"factual predicate" for a § 2255 petitioner's claim may include the recognition of a legal right in a decision like *Savage*, *see id.* at 586, that conclusion is not binding on another district court, and this Court respectfully disagrees. The Court also observes that in a more recent decision, the author of the *Rios-Delgado* decision in fact concluded that a federal appellate holding in a case similar to *Savage* did *not* constitute a new "fact" for the purpose of triggering AEDPA's one-year limitations period. *See Estrada-Mendez v. United States*, Nos. EP-05-CA-0254-DB, EP-02-CR-1528-DB, 2008 WL 558040, at *3 (W.D. Tex. Feb. 28, 2008). ("Notwithstanding Estrada's argument to the contrary, the Court finds the Fifth Circuit's clarification of the law in [*United States v. Rodriguez-Rodriguez*, 388 F.3d 466 (5th Cir. 2004)] does not constitute a 'factual predicate' within the meaning of § 2255 paragraph 6(4)."). In reaching that conclusion, the court distinguished the petitioner's situation from that of the habeas petitioner in *Johnson v. United States*, 544 U.S. 295, and, like this Court, cited the Seventh Circuit's decision in *Lo*, 506 F.3d 572, and the Eighth Circuit's decision in *E.J.R.E.*, 453 F.3d 1094, as persuasive authority. *See Estrada-Mendez*, 2008 WL 558040, at *3.

Because a legal opinion or theory does not constitute a "fact" for the purposes of § 2255(f)(4), the Court cannot find that the Second Circuit's decision in *Savage* triggered the start of the one-year limitations period in which Mr. Tellado was required to submit his petition.

**B.**

Mr. Tellado also argues that because of the decision in *Savage*, AEDPA's one-year limitations period should have been equitably tolled, and that as a result of such tolling, his petition would be timely. The Second Circuit has recognized that equitable tolling of AEDPA's one-year limitations period is appropriate "in rare and exceptional circumstances," *Belot v. Burge*, 490 F.3d 201, 205 (2d Cir. 2007), on a "case-by-case basis to prevent inequity." *Warren*

*v. Garvin*, 219 F.3d 111, 113 (2d Cir. 2000). The petitioner bears the burden of establishing that he is entitled to equitable tolling. *See Rashid v. Mukasey*, 533 F.3d 127, 130 (2d Cir. 2008); *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000).

To qualify for equitable tolling, Mr. Tellado must establish (1) that he pursued his rights diligently, and (2) that some extraordinary circumstance prevented him from timely filing his § 2255 petition. *See Diaz v. Kelly*, 515 F.3d 149, 153 (2d Cir. 2008). The Second Circuit has made clear that these two inquiries are interdependent. "A petitioner seeking equitable tolling must demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances." *Jenkins*, 630 F.3d at 303 (quotation marks and citation omitted).

If the petitioner satisfies this two-prong inquiry, the Court may "extend the statute of limitations beyond the time of expiration as necessary to avoid inequitable circumstances." *Valverde v. Stinson*, 224 F.3d 129, 133 (2d Cir. 2000) (quotation marks omitted) (quoting *Johnson v. Nyack Hosp.*, 86 F.3d 8, 12 (2d Cir. 1996)). Mr. Tellado argues that he faced extraordinary circumstances because "there was no way he could reasonably have recognized his right to challenge the career offender enhancement based on convictions for violating Conn. Gen. Stat. § 21a-277(a) prior to *Savage*," and that "once *Savage* was published, Mr. Tellado, as an incarcerated prisoner, had to have a reasonable opportunity to discover the case." Movant's Mem. Re: Timeliness and Waiver [doc. # 19] at 14. According to Mr. Tellado,

> [a]n evidentiary hearing would reveal that Mr. Tellado's attorney in the underlying case did not notify him of his eligibility for relief under *Savage*. His attorney had not recognized the issue at his sentencing and did not stay in touch with him after the sentencing, since Mr. Tellado did not appeal his conviction and

his lawyer was appointed for him for that one case only. Mr. Tellado had no reason to expect the *Savage* decision, and he was not checking the library everyday [sic] looking for it.

*Id.* at 10. Mr. Tellado has failed to show that an evidentiary hearing is needed or that those supposedly extraordinary circumstances entitle him to equitable tolling.

First, the Court cannot agree that the Second Circuit's *Savage* decision constituted or created "an extraordinary circumstance" that would justify equitable tolling of AEDPA's one-year limitations period. While Mr. Tellado is correct that it would have been impossible for him to cite the *Savage* decision prior to the issuance of the decision, the unavailability of that helpful precedent is not an "extraordinary circumstance." Whether a circumstance is extraordinary for the purposes of equitable tolling is determined by inquiring "how severe an obstacle it is for the prisoner endeavoring to comply with AEDPA's limitations period." *Diaz*, 515 F.3d at 154. As this Court has previously noted, an extraordinary circumstance is one that that "prevented [a petitioner] from pursuing his legal rights." *Adkins v. Warden*, 585 F. Supp. 2d 286, 297 (D. Conn. 2008); *see Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000); *cf. Gonzalez v. Hasty*, --- F.3d ----, No. 07-1787-pr, 2011 WL 2463562, at *4 (2d Cir. June 22, 2011) ("Equitable tolling is an extraordinary measure that applies only when [a] plaintiff is *prevented from filing* despite exercising that level of diligence which could reasonably be expected in the circumstances." (emphasis in original) (quotation marks and citation omitted)). In other words, a circumstance is an obstacle to compliance with AEDPA's limitations period if it "effectively prohibits the petitioner from pursuing habeas." *Raynor v. Dufrain*, 28 F. Supp. 2d 896, 900 (S.D.N.Y. 1998) (explaining that "[e]quitable tolling is warranted" when a petitioner is thwarted by events beyond his control "such as the misplacement of files, or being denied access to materials necessary to file a habeas petition").

The few situations in which the Second Circuit has found an "extraordinary circumstance" that warranted equitable tolling of AEDPA's one-year limitations period involved obstacles such as a correctional officer's intentional confiscation of a prisoner's petition shortly before the filing deadline, *see Valverde*, 224 F.3d at 133; an attorney's egregious failure to file a habeas petition on a prisoner's behalf despite explicit directions from his client to do so, *see Baldayaque v. United States*, 338 F.3d 145, 150 (2d Cir. 2003); a state appellate court's failure to inform a prisoner that leave to appeal was denied, *see Diaz*, 515 F.3d at 154-55; and an attorney's failure to file his client's petition until one day after the AEDPA deadline, despite the fact that the petitioner had been persistent in maintaining contact with the attorney and had specifically instructed him not to wait until the last day to file, *see Dillon v. Conway*, --- F.3d ----, No. 08-4030-pr, 2011 WL 1548955, at *5 (2d Cir. Apr. 26, 2011) (per curiam). Mr. Tellado, however, does not claim that some external force interfered with his attempt to timely file a § 2255 petition. He merely asserts that until the Second Circuit issued its opinion, he was unable to "ma[ke] use of the [*Savage*] decision to attack his career offender designation." Movant's Mem. Re: Timeliness and Waiver [doc. # 19] at 15. While the unavailability of the holding in *Savage* precluded Mr. Tellado from filing a § 2255 petition that relied on *Savage*, the unavailability of that precedent did not, in itself, prevent him from timely filing a § 2255 petition. *See, e.g.*, *E.J.R.E.*, 453 F.3d at 1098 ("The mere fact that [the Eighth Circuit's] ruling in *J.W.T.* made it more likely that Appellants' collateral attack would be successful does not change the reality that Appellants were free, at any time, to file their § 2255 petitions after final judgment was entered and before the one-year statute of limitations period had expired.").[3]

---

[3] Although both the Eighth and Ninth Circuit have recognized circumstances in which a change in circuit precedent justified equitable tolling of AEDPA's one-year limitations period, those

The timing of the Second Circuit's decision in *Savage* did not even prevent Mr. Tellado from making the argument adopted by the Second Circuit in *Savage* in a timely § 2255 petition. Indeed, Mr. Tellado could have made that argument prior to his sentencing. Instead, in his plea agreement, Mr. Tellado conceded that he was a career offender. *See* Plea Agreement at 3. While the Second Circuit's decision in *Savage* no doubt made it more likely that a prisoner could effectively challenge his sentence on the basis that his predicate convictions for narcotics sales under Connecticut state law were the result of *Alford* pleas, nothing prevented Mr. Tellado from making that argument before the Second Circuit's publication of its opinion. *See, e.g.*, Br. of Def.-Appellant at 6, *United States v. Savage*, 542 F.3d 959, 2006 WL 6272576 (2d Cir. 2008) (No. 06-4097-cr); Def.'s Post-Hr'g Sentencing Mem., *United States v. Lopez*, No. 3:06-cr-283 (JBA) (D. Conn. Jan. 14, 2008), ECF No. 119, at 7. The Court notes that while Mr. Tellado claims that he "could not reasonably have anticipated the *Savage* decision," Movant's Mem. Re: Timeliness and Waiver [doc. # 19] at 8 n.4, Mr. Tellado has also argued that the *Savage* decision was "hiding in plain sight." Mem. in Support of Movant's Claim of Retroactivity [doc. # 10] at 3.

Second, to the extent that Mr. Tellado argues that prior to the date on which he was informed of the *Savage* decision by a fellow inmate, his limited knowledge of the law prevented him from recognizing the possibility that his Connecticut convictions might not constitute controlled substance offenses for the purpose of a career offender enhancement, *see* Movant's

---

cases involved appellate court decisions that effectively changed the rules for deciding whether a habeas petition is timely. *See Townsend v. Knowles*, 562 F.3d 1200, 1205 (9th Cir. 2009) (finding that a petitioner was entitled to equitable tolling where he had relied on controlling circuit precedent that an untimely state habeas petition tolled § 2244(d)'s statute of limitations); *Riddle v. Kemna*, 523 F.3d 850, 857 (8th Cir. 2008) (en banc) (recognizing that a change in circuit precedent that re-defined the time at which a state court judgment of conviction in a § 2254 petitioner's case was deemed final for the purposes of AEDPA could constitute an "extraordinary circumstance" that justified equitable tolling of the newly defined one-year limitations period, if a petitioner had otherwise been diligently pursuing his rights).

Mem. Re: Timeliness and Waiver [doc. # 19] at 10, 14, Mr. Tellado's lack of legal knowledge or legal assistance is not an extraordinary circumstance meriting tolling. *See, e.g.*, *Rush v. Lempke*, No. 09-CV-3464 (JFB), 2011 WL 477807, at *7 (E.D.N.Y. Feb. 2, 2011); *Giles v. Smith*, No. 10 Civ. 5322 (PKC), 2010 WL 4159468, at *3 (S.D.N.Y. Oct. 8, 2010); *Adkins*, 585 F. Supp. 2d at 297; *Williams v. Breslin*, No. 03-cv-1848 (RWS), 2004 WL 2368011, at *6 (S.D.N.Y. Oct. 20, 2004); *Francis v. Miller*, 198 F. Supp. 2d 232, 235 (E.D.N.Y. 2002); *see also Urena v. Brown*, No. 06-cv-3163 (LBS), 2007 WL 3284646, at *2 (S.D.N.Y. Nov. 5, 2007) (rejecting petitioner's claim that he faced an "extraordinary circumstance" warranting equitable tolling because he received erroneous advice from an inmate legal library clerk); *Chan v. United States*, No. 00-cv-0862 (ILG), 2000 WL 1843290, at *2 (E.D.N.Y. Oct. 25, 2000) (rejecting petitioner's claim that the fact that he "[had to] rely on inmate jail house lawyers" and the fact that his attempts to obtain legal advice from fellow inmates "ha[d] not been fruitful" qualified as extraordinary circumstances (quotation marks omitted)). Mr. Tellado's unfamiliarity with the law no doubt made it difficult for him to recognize potential grounds on which his sentence might be collaterally attacked, but as this Court has previously explained, "tolling for this common obstacle that most petitioners face would undermine the legislative decision to impose a one-year limitations period." *Adkins*, 585 F. Supp. 2d at 297.

Third, even if the Second Circuit's decision in *Savage* provided a ground for tolling AEDPA's one-year limitations period – which it does not – Mr. Tellado has not alleged any facts that suggest he pursued his rights with reasonable diligence throughout the period he seeks to toll. When a habeas petitioner faces an extraordinary circumstance that prevents him or her from timely filing his or her petition, the petitioner is entitled only to a tolling period "equal to the length of time between (i) the date on which filing ordinarily would have been required under the

applicable limitations period and (ii) *the earliest date* after the [extraordinary circumstance] by which that petitioner, acting with reasonable diligence, should have filed his or her petition." *Valverde*, 224 F.3d at 134 (citation omitted) (emphasis added). In other words, to gain the benefit of equitable tolling, Mr. Tellado would have to show not only that an extraordinary circumstance prevented him from filing his § 2255 petition within the one-year limitations period, but also that it was impossible for him, acting with reasonable diligence, to file it at any time earlier than September 25, 2009.

Mr. Tellado argues – and the Court agrees – that he could not reasonably have become aware of the *Savage* decision until it became accessible in the prison law library. *See* Movant's Mem. Re: Timeliness and Waiver [doc. # 19] at 8-9; *Easterwood v. Champion*, 213 F.3d 1321, 1323 (10th Cir. 2000) ("Holding that a prisoner could with 'due diligence' discover information related in a case before the prison law library had access to a copy of the opinion simply ignores the reality of the prison system."). From July 10, 2008 until December 19, 2008, Mr. Tellado was incarcerated at the Wyatt Detention Center ("Wyatt"). *See* Stipulation of Parties Concerning Availability of the *Savage* Decision [doc. # 25] at 1. The parties agree that although the *Savage* decision was issued on September 18, 2008, it was not available to inmates at Wyatt prior to Mr. Tellado's departure from that institution. *See id.* However, the parties also agree that the *Savage* decision was available to inmates at MDC-Brooklyn when Mr. Tellado arrived there on December 19, 2008 and that it remained available through the time Mr. Tellado left that institution on April 22, 2009. *See id.* at 1. The *Savage* decision also has been available to inmates through the electronic law library at USP-Canaan throughout the period of Mr. Tellado's incarceration there, from April 22, 2009 through the present. *See id.* at 2.

Despite the fact that Mr. Tellado had access to the *Savage* decision beginning on December 19, 2008, Mr. Tellado did not file his § 2255 petition until over nine months later, on September 25, 2009. Mr. Tellado explains that "[a]n evidentiary hearing would . . . reveal that Mr. Tellado did not learn of the *Savage* decision until he was told of it by an inmate at USP-Canaan a few weeks before [he] filed his § 2255 motion." Movant's Mem. Re: Timeliness and Waiver [doc. # 19] at 11. He also asserts that he acted with reasonable diligence to file his petition once he learned of *Savage* from that fellow inmate. *See id.* at 11, 13, 15. As already noted, Mr. Tellado asserts that he "had no reason to expect the *Savage* decision, and . . . was not checking the library everyday [sic] looking for it." *Id.* at 8-9. But those assertions, even if they were proven true, would not support equitable tolling.

Even if the Court assumes for the sake of argument that the unavailability of the *Savage* decision constituted an "extraordinary circumstance," and even if the Court accepts as true Mr. Tellado's contention that he pursued his rights with diligence as soon as he learned of *Savage*, Mr. Tellado has not alleged any facts that would demonstrate that he "acted with reasonable diligence *throughout the period he seeks to toll*." *Hizbullahankhamon v. Walker*, 255 F.3d 65, 75 (2d Cir. 2001) (emphasis added) (quotation marks and citation omitted).[4] Although Mr. Tellado argues that he was unfamiliar with the *Savage* decision prior to his conversation with his fellow

---

[4] The question of whether a petitioner pursued his rights with reasonable diligence in light of extraordinary circumstances generally requires an evidentiary hearing. *See, e.g.*, *Baldayaque v. United States*, 338 F.3d 145, 150 (2d Cir. 2003). However, because as a matter of law Mr. Tellado has not demonstrated that he faced any extraordinary circumstance, and because he has not alleged facts that, taken as true, would establish reasonable diligence throughout the period he seeks to toll, there is no need to hold an evidentiary hearing in this case. *See, e.g.*, *Lopez v. United States*, 180 F. App'x 305, 306 (2d Cir. 2006) (summary order) (rejecting appellant's argument that an evidentiary hearing was required to resolve factual issues regarding extraordinary circumstances because the appellant "ha[d] not alleged any facts with regard to his diligence").

inmate in September 2009, Mr. Tellado has acknowledged that he could have discovered the decision, "exercising reasonable diligence" once it became available in his prison law library, Movant's Mem. Re: Timeliness and Waiver [doc. # 19] at 8-9, which in this case was on December 19, 2008. He has offered no explanation – beyond his lack of legal expertise or legal assistance – why the unavailability of the *Savage* decision prior to December 19, 2008 prevented him from filing his § 2255 petition until September 25, 2009. *Cf. Cox v. Small*, No. CIV S-09-2135 LKK DAD P, 2010 WL 4289868, at \*5-\*6 (E.D. Cal. Oct. 22, 2010) (observing that "a prisoner's lack of understanding of the law, without more, is not grounds for equitable tolling" and finding that the fact that "it was not until June or July 2008 that a fellow prisoner[] informed [the petitioner] that his trial counsel was ineffective for failing to investigate and call certain witnesses" was not a ground for equitable tolling).[5] In other words, although Mr. Tellado can establish the causal connection between his lack of knowledge of the *Savage* decision prior to September 2009 and his failure to file his § 2255 petition until September 25, 2009, he cannot "show a causal relationship" between the unavailability of the *Savage* decision prior to December 19, 2008 – "the alleged extraordinary circumstance" – and his failure to file his petition prior to September 25, 2009. *Jenkins*, 630 F.3d at 304-05.

In sum, *Savage* did not create an "extraordinary circumstance," and even if the unavailability of the *Savage* decision could be considered an extraordinary circumstance – which it cannot – Mr. Tellado has alleged no facts that suggest he exercised reasonable diligence to

---

[5] Mr. Tellado does not argue, for instance, that he failed to timely file his § 2255 petition in reliance on specific Second Circuit precedent that was directly contrary to the holding in *Savage*. *Cf. Townsend*, 562 F.3d at 1205 (finding that a petitioner was entitled to equitable tolling because he had relied on controlling Ninth Circuit precedent that an untimely state habeas petition tolled § 2244(d)'s statute of limitations). Nor does he argue that once he had access to the law libraries at MDC-Brooklyn and USP-Canaan, he researched legal grounds on which to challenge his sentence without success.

locate that decision or otherwise research legal grounds to collaterally attack his sentence. Therefore, Mr. Tellado is not entitled to equitable tolling of AEDPA's one-year limitations period.

## C.

Finally, Mr. Tellado argues that his petition should not be barred on the basis that it is untimely because he is "actually innocent." The Second Circuit has expressly left open the question of whether there is an exception to AEDPA's statute of limitations based on actual innocence. *See Doe v. Menafee*, 391 F.3d 147, 161 (2d Cir. 2004) ("We have not yet decided this question, reasoning that we should decide whether the Constitution requires tolling for innocence only in a case in which the petitioner can show that, because he can demonstrate his actual innocence, he would be injured if not entitled to tolling on this basis.") At the same time, the Second Circuit has stated that to take advantage of an actual innocence exception to AEDPA's one-year limitations period, "[t]he petitioner [would have to] support his claim 'with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial.'" *Doe*, 391 F.3d at 161 (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)). "Thus, [the Second Circuit has] instructed district courts faced with untimely petitions in which the petitioner asserts his or her actual innocence to determine, in each case, whether the petitioner has presented a credible claim of actual innocence before ruling on the legal issues of whether such a showing provides a basis for equitable tolling and whether the petitioner must also demonstrate that he or she pursued his or her claim with reasonable diligence." *Id*. For reasons that follow, the Court finds that Mr. Tellado has not presented a credible claim of actual innocence, and therefore, it need not decide whether such a showing would provide a basis for tolling AEDPA's limitations period in this case.

**1.**

In the habeas context, the term "actual innocence" is used in two senses. First, "in a capital case where the contention is not that the defendant did not commit the crime but rather that the penalty imposed on him should not be death, the concept . . . refers to clear and convincing evidence that no reasonable juror would have found the existence of aggravating circumstance[s] or other conditions that, under the applicable law, made the petitioner eligible for the death penalty." *Poindexter v. Nash*, 333 F.3d 372, 381 (2d Cir. 2003) (citing *Sawyer v. Whitley*, 505 U.S. 333, 336, 344-45 (1992)). Second, in non-capital cases like Mr. Tellado's, the concept "normally means simply that the defendant did not commit the crime." *Id.* A petitioner is entitled to "invoke the actual innocence gateway and obtain review of the merits of his claims" despite a procedural default if, "in light of all the evidence, it is 'more likely than not that no reasonable juror would have found the petitioner guilty beyond a reasonable doubt.'" *Doe*, 391 F.3d at 162 (quoting *Schlup*, 513 U.S. at 327). Mr. Tellado does not argue that in light of all the evidence, no reasonable juror would have found him guilty beyond a reasonable doubt of the federal offense for which he was sentenced. Rather, Mr. Tellado claims that he is "actually innocent of being a career offender." *See* Movant's Reply [doc. # 22] at 4.

While the Second Circuit has recognized that the concept of "actual innocence" can be applied to habeas claims asserting errors during the penalty phase in non-capital cases, it has allowed only that a petitioner may show that he is actually innocent of the crime or act for which he received an enhanced sentence. *See Poindexter*, 333 F.3d at 380. Thus, in *Poindexter v. Nash*, the Second Circuit rejected the "proposition that 'misclassification as [a] career offender is equivalent to a claim of actual innocence.'" *Id.* (alteration in original) (citation omitted). Like Mr. Tellado, Mr. Poindexter had been convicted of a federal narcotics offense and sentenced as a

career offender, *see id.* at 374-75, and like Mr. Tellado, he argued that he was "innocent of being a career offender – the Guidelines factor that increased his sentence." *Id.* at 380. In making that argument, Mr. Poindexter relied on the Second Circuit's decision in *Spence v. Superintendant, Great Meadow Correctional Facility*, 219 F.3d 162 (2d Cir. 2000) and the Fourth Circuit's decision in *United States v. Maybeck*, 23 F.3d 888 (4th Cir. 1994). Those opinions "applied the concept of 'actual innocence' to the penalty phase of noncapital offenses," but, the Second Circuit explained, the *Spence* and *Maybeck* courts only "grant[ed] collateral relief to applicants who showed that they in fact had not committed the crimes on which the calculation or imposition of their sentences was based." *Poindexter*, 333 F.3d at 381; *see also Spence*, 219 F.3d at 172 (directing the district court to grant Mr. Spence's habeas petition because he "clearly and convincingly demonstrate[d]" that he was "actually innocent of the act for which he received an enhanced sentence"). Mr. Poindexter argued that he had been wrongly classified as a career offender because the three convictions underlying his career offender enhancement should have been treated as a single conviction. *See Poindexter*, 333 F.3d at 381. The Second Circuit rejected Mr. Poindexter's argument that such a misclassification could establish "actual innocence," noting that Mr. Poindexter "mad[e] no suggestion whatever that he did not actually commit those three prior crimes." *Id.*[6]

Like Mr. Poindexter, Mr. Tellado does not assert that he is actually innocent of the "*act* on which his harsher sentence was based." *Spence*, 219 F.3d at 172 (emphasis added). Mr.

---

[6] The Second Circuit also noted that Mr. Poindexter did not "suggest that those prior crimes were not felonies punishable by more than one year's imprisonment or that they were not crimes of violence or controlled substance offenses." *Poindexter*, 333 F.3d at 381. However, nowhere in the opinion does the Second Circuit suggest that Mr. Poindexter would have established his "actual innocence" if he had demonstrated that the sentencing court incorrectly classified his prior convictions as "controlled substance offenses" under the Guidelines.

Tellado does not allege that he is actually innocent of exchanging drugs for money, which under *Savage* is the narrower range of conduct that constitutes a "sale" of drugs for the purpose of a career offender enhancement based on prior convictions for controlled substance offenses. Rather, he "raise[s] only a legal argument" that two of his convictions should not count for the purpose of a career offender designation, which is "an approach [the Second Circuit] [has] . . . rejected." *Williams v. United States*, 117 F. App'x 132, 133 (2d Cir. 2004) (summary order) (citing *Poindexter*, 333 F.3d at 382). Mr. Tellado's claim of "actual innocence" does not implicate any question of fact that a jury would decide. *See, e.g.*, *Ethridge v. United States*, No. 08-CV-4868 (SLT), 2010 WL 2735826, at *5-*6 (E.D.N.Y. July 9, 2010) (discussing *Poindexter*); *see also  United States v. Kenney*, 391 F. App'x 169, 172 & n.2 (3d Cir. 2010) (unpublished opinion) (noting that the career offender enhancement need not be proven to a jury beyond a reasonable doubt and rejecting the Eleventh Circuit's conclusion that "the act of being a career offender is essentially a separate offense" (quotation marks omitted) (discussing *Gilbert v. United States*, 609 F.3d 1159 (11th Cir. 2010))). Because Mr. Tellado has made no attempt to show that "in light of all the evidence, it is 'more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt'" of actually selling – rather than merely offering to sell – drugs during the predicate offenses at issue, *Doe*, 391 F.3d at 162 (quoting *Schlup*, 513 U.S. at 327), he has not presented a credible claim of actual innocence.


## 2.

While the Court rejects Mr. Tellado's claim of actual innocence for the reasons just stated, the Court will for the sake of thoroughness discuss two additional arguments made by Mr. Tellado in support of his actual innocence claim.

First, Mr. Tellado claims that the Fourth Circuit's decision in *Maybeck* stands for the proposition that "where the court sentences you under the mistaken view that certain conduct . . . was established by your prior conviction, but in fact that conduct was not established by your prior conviction, you have demonstrated actual innocence." Movant's Reply [doc. # 22] at 34. *Maybeck* is not binding precedent for this Court. But Mr. Tellado also mischaracterizes *Maybeck*'s reasoning. Mr. Maybeck was deemed to have committed a crime of violence because he had incorrectly described a prior conviction as for "armed burglary" when in fact the conviction was for third degree burglary, which does not include an element of being armed with a deadly weapon. *Maybeck*, 23 F.3d at 890 & n.4. In other words, in Mr. Maybeck's case, the sentencing court had not misclassified a conviction for a particular state offense as a crime of violence – rather, the defendant's conviction in fact had been for a different state offense. Moreover, although the government argued that it would have been able to show that Mr. Maybeck's third degree burglary conviction constituted a crime of violence, the court rejected that argument because "it [did] not appear that Maybeck actually possessed a weapon or threatened use of physical force at the time." *Id.* at 892 n.8. The Fourth Circuit has subsequently emphasized the narrowness of its holding in *Maybeck* and stated that "the legal argument" that a predicate conviction was misclassified "is not cognizable as a claim of actual innocence." *United States v. Pettiford*, 612 F.3d 270, 284 (4th Cir. 2010) (citing *United States v. Mikalajunas*, 186 F.3d 490, 495 (4th Cir. 1999)).

Second, Mr. Tellado contests the Government's argument that to establish actual innocence, he would need to "show that he did not actually distribute drugs or possess with intent to distribute drugs before his arrest for the prior conviction," Movant's Reply [doc. # 22] at 29, arguing that "[his] actual past conduct is irrelevant for the career offender enhancement," *id.*

Here, Mr. Tellado conflates two separate standards. A court that is considering whether a petitioner's "actual innocence" provides a gateway for consideration of an otherwise barred claim on collateral attack of the petitioner's sentence engages in a different inquiry than a sentencing court that is determining whether to apply a career offender enhancement under the Guidelines. *Compare Doe*, 391 F.3d at 162 ("Once it has been determined that the new evidence is reliable . . . reviewing courts [must] consider [a claim of actual innocence] in light of the evidence in the record as a whole, including evidence that might have been inadmissible at trial."), *with Shepard*, 544 U.S. at 25-26 (describing the limited evidence a sentencing court may consider to determine whether a prior conviction constitutes a predicate offense within the scope of the federal enhancement). Because, as already noted, Mr. Tellado has not even suggested – let alone presented any evidence – that he was innocent in fact of exchanging drugs for money during the predicate offenses at issue, his claim of actual innocence is without merit.

## II.

The Government's second argument for why Mr. Tellado cannot gain the benefit of *Savage* is that, as part of his plea agreement, Mr. Tellado waived his right to appeal or collaterally attack his sentence. *See* Government's Resp. [doc. # 3] at 4. Mr. Tellado argues that the waiver is not valid and enforceable, or, alternatively, that it should not be enforced because he is "actually innocent." The Court has already evaluated and rejected Mr. Tellado's claim that he is "actually innocent," and it will not repeat that analysis here. For reasons that follow, the Court finds that Mr. Tellado's waiver was valid and enforceable.

## A.

Mr. Tellado waived his right to collaterally attack his sentence as part of his plea agreement. Mr. Tellado's plea agreement consists of a May 4, 2007 letter to which the

Government, Mr. Tellado, and Mr. Tellado's counsel were all signatories. Mr. Tellado's signature "certifies that he has read [the] plea agreement letter, or has had it translated and read to him, that he has had ample time to discuss [the] agreement with counsel, and that he fully understands and accepts its terms." Plea Agreement at 8.

After describing the relevant count of the indictment and the corresponding statutory penalties for that count, the plea agreement recites a Guidelines calculation that arrives at an imprisonment range of 188-235 months. The plea agreement states that "[i]t is specifically agreed that the defendant will not appeal or collaterally attack in any proceeding, including a motion under 28 U.S.C. § 2255 and/or § 2241, the conviction or sentence of imprisonment imposed by the Court if that sentence does not exceed 188 months even if the Court reaches a sentencing range permitting such a sentence by a Guidelines analysis different from that specified above or otherwise contemplated by the parties." *Id.* at 4. The plea agreement then states, "The defendant expressly acknowledges that he is waiving his appellate rights and rights of collateral attack knowingly and intelligently." *Id.* at 4. This waiver of Mr. Tellado's right to appeal or collaterally attack his sentence "is in a familiar form that [the Second Circuit] ha[s] consistently held enforceable." *United States v. Roque*, 421 F.3d 118, 121 (2d Cir. 2005). However, it does not serve as a waiver of Mr. Tellado's right to collaterally attack his sentence on the basis that his plea itself, including the waiver, was not intelligent and voluntary. *See id.*

Mr. Tellado acknowledges that in his plea agreement, he "waived his right to appeal and/or challenge his conviction or sentence in any collateral proceeding under § 2255 or 2241." Mem. of Law in Supp. of Mot. to Vacate, Set Aside, or Correct Sentence [doc. # 1] at 10. He claims that this waiver of collateral attack rights is unenforceable because "[t]he plea transcript reflects that while the Court did advise [Mr. Tellado] of the consequences of waiving his right to

appeal, it did not advise him of the consequences of waiving his right to file a collateral attack," in violation of Rule 11(b)(1)(N) of the *Federal Rules of Criminal Procedure*. *Id.*; *see* Movant's Mem. Re: Timeliness and Waiver [doc. # 19] at 21-28. Mr. Tellado's argument is based on the fact that during the plea colloquy, the Court noted that Mr. Tellado had waived his right to appeal but did not specifically "inquire of [Mr. Tellado] regarding [the] purported waiver [of his right to collaterally attack his sentence]." Movant's Reply [doc. # 22] at 4.[7] The Court regrets that it omitted to mention Mr. Tellado's waiver of his right to collaterally attack his sentence following the prosecutor's specific identification of that waiver during the plea colloquy. For the reasons that follow, however, the Court's omission did not render Mr. Tellado's waiver of collateral attack rights unenforceable.

**1.**

Rule 11(b)(1)(N) of the *Federal Rules of Criminal Procedure* requires that, before the Court accepts a guilty plea, the defendant must be placed under oath, and the Court "must inform the defendant of, and determine that the defendant understands, . . . the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence." Although "Rule 11 imposes strict requirements on what information the district courts must convey and determine before they accept a plea, it does not tell them precisely *how* to perform this important task in the great variety of cases that come before them." *United States v. Torrellas*, 455 F.3d 96, 102 (2d Cir. 2006) (emphasis in original) (quotation marks, alterations, and citation omitted).

---

[7] Mr. Tellado also points out that he had a limited educational background, that the instant case was his only federal conviction, that he had never before been presented with a waiver of collateral attacks, that he had never before filed a collateral attack, and that, although he speaks English, he was raised in a home where Spanish was the primary language. *See* Movant's Mem. Re: Timeliness and Waiver [doc. # 19] at 19.

The Government argues that the violation of Rule 11 alleged by Mr. Tellado is subject to plain error review. When a defendant does not preserve his claim of Rule 11 error in the trial court prior to entry of judgment, the alleged violation is subject only to plain error review on direct appeal. *See United States v. Vonn*, 535 U.S. 55, 59 (2002); *Torrellas*, 455 F.3d at 103. Under the plain error standard,

> an appellate court may . . . correct an error not raised at trial only where the appellant demonstrates that (1) there is an 'error'; (2) the error is 'clear or obvious, rather than subject to reasonable dispute'; (3) the error 'affected the appellant's substantial rights, which in the ordinary case means' it 'affected the outcome of the district court proceedings'; and (4) 'the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'

*United States v. Marcus*, --- U.S. ---, 130 S. Ct. 2159, 2164 (2010) (alteration in original) (citations omitted); *see United States v. Kaiser*, 609 F.3d 556, 565 (2d Cir. 2010). A Rule 11 error is a "nonstructural error." *United States v. Dominguez Benitez*, 542 U.S. 74, 82 (2004); *see id.* at 81 n.6 ("The omission of a single Rule 11 warning without more is not colorably structural."). Therefore, in order to satisfy the "affecting substantial rights" prong of the plain error standard, an appellant or petitioner must show that the Rule 11 error was "prejudicial." *Id.* at 81-82. In *Dominguez Benitez*, the Supreme Court held that in order to show prejudice, "a defendant who seeks reversal of his conviction after a guilty plea, on the ground that the district court committed plain error under Rule 11, must show a reasonable probability that, but for the error, he would not have entered the plea." *Id.* at 83. That standard requires the defendant to "satisfy the judgment of the reviewing court, informed by the entire record, that the probability of a different result is sufficient to undermine confidence in the outcome of the proceeding." *Id.* (quotation marks and citations omitted); *see Torrellas*, 455 F.3d at 103 ("In assessing the likely effect of a Rule 11 error, we are to examine the entire record.").

*Dominguez Benitez* and *Vonn* both involved claims of error under Rule 11(c)(3). *See Dominguez Benitez*, 542 U.S. at 80; *Vonn*, 535 U.S. at 60. The Supreme Court has not yet applied the plain error standard defined in *Dominguez Benitez* and *Vonn* to a case in which the appellant or petitioner sought to avoid a waiver of appeal or collateral attack rights on the basis of an alleged Rule 11(b)(1)(N) violation.

There are at least two reasons to believe that application of the Rule 11 plain error standard to alleged violations of Rule 11(b)(1)(N) might not be straightforward. First, in *Dominguez Benitez*, the Supreme Court explained how "a defendant who seeks *reversal of his conviction* after a guilty plea" on the basis of a Rule 11 error can satisfy the "affecting substantial rights" prong of the plain error standard. 542 U.S. at 83 (emphasis added). However, a defendant who – like Mr. Tellado – seeks to avoid a waiver of his right to appeal or collaterally attack his sentence on the basis of a Rule 11(b)(1)(N) error does not necessarily want to overturn his conviction. Second, a defendant who argues that his waiver of appeal or collateral attack rights was unknowing or involuntary as the result of the trial court's violation of Rule 11(b)(1)(N) is alleging a violation more serious than a mere Rule 11 error. In *Dominguez Benitez*, the Supreme Court distinguished a claim of Rule 11 error from "the constitutional question whether a defendant's guilty plea was knowing and voluntary." *Id.* at 84 n.10; *see also United States v. Timmreck*, 441 U.S. 780, 783 (1979) (explaining that "a formal violation of Rule 11. . . . is neither constitutional nor jurisdictional"). The Supreme Court noted that "when the record of a criminal conviction obtained by guilty plea contains no evidence that a defendant knew of the rights he was putatively waiving, the conviction must be reversed" – no separate showing of prejudice is required. *Dominguez Benitez*, 542 U.S. at 84 n.10. In other words, where a guilty

plea was unknowing or involuntary, it "[cannot] be saved even by overwhelming evidence that the defendant would have pleaded guilty regardless." *Id.*

Despite those uncertainties, the First, Third, Fifth, Sixth, Seventh, Eighth, Ninth, and Tenth Circuits all have held that the four-prong plain error standard of *Vonn* and *Dominguez Benitez* applies to unpreserved claims that a court violated Rule 11(b)(1)(N) during a defendant's plea colloquy. However, the Circuits are split on how a reviewing court should proceed once it reaches the third prong of that standard – whether an error affected the appellant or petitioner's "substantial rights."

The First Circuit has held that the *Dominguez Benitez* requirement of a showing of a "reasonable probability" that, but for the trial court's Rule 11 error, the defendant would not have entered a guilty plea applies equally to challenges to waivers of appeal and collateral attack rights under Rule 11(b)(1)(N). *Sotirion v. United States*, 617 F.3d 27, 34 (1st Cir. 2010) (citation omitted). The Fifth and Eighth Circuits, too, appear to have concluded that a defendant can only establish that a Rule 11(b)(1)(N) violation affected substantial rights if he makes the showing defined by the Supreme Court in *Dominguez Benitez. See United States v. Oliver*, 630 F.3d 397, 412 (5th Cir. 2011) (stating that the standard for finding that a Rule 11(b)(1)(N) error affected a defendant's substantial rights is "a reasonable probability that, but for the error, he would not have entered the plea," but not reaching that issue in its analysis (quotation marks and citation omitted)); *United States v. Frook*, 616 F.3d 773, 777 (8th Cir. 2010) (concluding that "Frook has not demonstrated that the district court's failure to advise him of the terms of [the appeal waiver], as required by Rule 11(b)(1)(N), affected his decision to plead guilty," but noting that the government had "waived any claim that Frook waived his right to appeal")

The Third, Sixth, Seventh, and Ninth Circuits have held that once there has been a showing that the trial court committed plain error under Rule 11(b)(1)(N), a defendant seeking to avoid a waiver of his right to appeal his sentence can establish that the error affected substantial rights by demonstrating that the error prevented him from understanding the waiver – in other words, by demonstrating that the waiver was in fact unknowing because there was no "functional substitute" for the Rule 11(b)(1)(N) "safeguard." *United States v. Murdock*, 398 F.3d 491, 497 (6th Cir. 2005); *see United States v. Corso*, 549 F.3d 921, 929 (3d Cir. 2008) ("'[W]here . . . the defendant . . . only challenges the validity of his appellate waiver so that he may appeal from his sentence, he is obliged to show a reasonable probability that the Rule 11 error 'precluded him from understanding that he had a right to appeal and that he had substantially agreed to give up that right.'" (citation omitted)); *United States v. Sura*, 511 F.3d 654, 662 (7th Cir. 2007) ("If the safeguard required by Rule 11 is missing, the record must reveal an adequate substitute for it, and the defendant must show why the omission made a difference to him."); *United States v. Arellano-Gallegos*, 387 F.3d 794, 797 (9th Cir. 2004) ("Because this was not a technical violation of Rule 11, but rather a wholesale omission, and there is nothing elsewhere in the record to indicate that Arellano understood the right to appeal his sentence, his substantial rights were affected.").

The Tenth Circuit seems to apply a hybrid of these two approaches. In its post-*Vonn* cases applying the plain error standard to appellate waiver challenges, the Tenth Circuit has purported to apply the rule that, "[i]n the context of a plea agreement, an error is prejudicial if the defendant has shown he would not have pleaded guilty if the district court had complied with Rule 11(b)(1)(N)." *United States v. Edgar*, 348 F.3d 867, 872 (10th Cir. 2003); *see United States v. Sandoval*, No. 11–2054, 2011 WL 2210038, at *1 (10th Cir. June 8, 2011) (unpublished order

and judgment). In applying that standard, though, the Tenth Circuit has asked whether the defendant "knowingly and voluntarily waived his right to appeal." *Edgar*, 348 F.3d at 872; *see Sandoval*, 2011 WL 2210038, at \*2.

In sum, it appears that there is no consensus about how the Rule 11 plain error inquiry interacts with the requirement that a waiver of appeal or collateral attack rights be knowing and voluntary in the context of challenges under Rule 11(b)(1)(N). Since *Vonn* was decided in 2002, the Second Circuit has not considered a Rule 11(b)(1)(N) challenge to a waiver of rights to appeal or collaterally attack sentence in any published opinion. Nonetheless, a few established principles continue to guide the Second Circuit's consideration of challenges to appellate and collateral attack waivers.

The Second Circuit has repeatedly held that "[t]o be enforceable, guilty pleas and waivers of right to appeal sentence must be knowing and voluntary." *Roque*, 421 F.3d at 122 (citation omitted). The Second Circuit also has stated that "[k]nowing and voluntary appellate waivers included in plea agreements must be enforced because, if they are not, the covenant not to appeal becomes meaningless and would cease to have value as a bargaining chip in the hands of defendants." *United States v. Granik*, 386 F.3d 404, 412 (2d Cir. 2004) (quotation marks and citation omitted). "The[] exceptions to the presumption of the enforceability of [an appellate or collateral attack] waiver . . . occupy a very circumscribed area of [Second Circuit] jurisprudence." *United States v. Gomez-Perez*, 215 F.3d 315, 319 (2d Cir. 2000). There are four situations in which in which a waiver of appeal or collateral attack rights is not enforceable:

> when [1] the waiver was not made knowingly, voluntarily, and competently, [2] when the sentence was imposed based on constitutionally impermissible factors, such as ethnic, racial or other prohibited biases, [3] when the government breached the plea agreement, or [4] when the sentencing court failed to enunciate any rationale for the defendant's sentence, thus amounting to an abdication of judicial responsibility subject to mandamus.

*United States v. Buissereth*, 638 F.3d 114, 118 (2d Cir. 2011) (alterations in original) (quoting *Gomez-Perez*, 215 F.3d at 319). Only the first of those exceptions – a waiver "not made knowingly, voluntarily, and competently" – is even potentially at issue in this case.

Although the Second Circuit has not yet explained how the Rule 11 plain error standard should be applied in the context of Rule 11(b)(1)(N), the Court believes that it is safe to conclude that in the Second Circuit, a defendant asserting an unpreserved Rule 11(b)(1)(N) error at the very least must (1) show that the trial court made a plain Rule 11 error; and (2) either demonstrate that the waiver was unknowing or involuntary; or demonstrate that but for the error, he would not have pled guilty, and that the error is one that affects the fairness, integrity or public reputation of judicial proceedings. *See Dominguez Benitez*, 542 U.S. at 83, 84 n.10; *Vonn*, 535 U.S. at 63; *Torrellas*, 455 F.3d at 103; *see, e.g.*, *United States v. Nicolo*, Nos. 09–0732–cr (L), 09–0821–cr (con), 09–0867–cr (con), 09–0847–cr (con), 2011 WL 1667085, at *4-*5 (2d Cir. May 4, 2011) (summary order) (noting that defendant's unpreserved claim of Rule 11(b)(3) error was reviewable only for plain error, but failing to reach the plain error analysis because the record did not support defendant's claim that his appeal waiver was "unknowing"); *United States v. Ramos*, 292 F. App'x 134, 135-36 (2d Cir. 2008) (summary order) (finding "no error, let alone plain error," by the district court during the Rule 11 colloquy and rejecting the "defendant's claim that his guilty plea was not 'intelligent' and 'knowing' because the [d]istrict [c]ourt did not explicitly discuss the issue of collateral attack").

Finally, although the Government argues that Mr. Tellado's unpreserved Rule 11(b)(1)(N) claim fails to satisfy the plain error standard of review, the Court notes that the standard of review for alleged Rule 11(b)(1)(N) violations in § 2255 proceedings may be even stricter than plain error. *See Vonn*, 535 U.S. at 64 (citing *Timmreck*, 441 U.S. at 783); *see also*

*Dominguez Benitez*, 542 U.S. at 83 n.9 (observing that "[a] defendant will rarely, if ever, be able to obtain relief for Rule 11 violations under § 2255"). As the Second Circuit has explained, "[t]o successfully challenge a conviction based on a Rule 11 violation, a [§ 2255] petitioner must establish that the violation constituted a 'constitutional or jurisdictional' error, or establish that the error resulted in a 'complete miscarriage of justice,' or in a proceeding 'inconsistent with the rudimentary demands of fair procedure.'" *Zhang v. United States*, 506 F.3d 162, 168 (2d Cir. 2007) (quoting *Timmreck*, 441 U.S. at 783). "In addition" to that requirement – at least in the Second Circuit – "the petitioner must demonstrate that the violation was prejudicial." *Id.* (citing *United States v. Vaval*, 404 F.3d 144, 151) (2d Cir. 2005)).[8]

The Court will first consider whether Mr. Tellado has demonstrated even a technical or formal violation of Rule 11(b)(1)(N). The Court will then decide whether the record demonstrates that Mr. Tellado knowingly and voluntarily waived his right to collaterally attack his sentence. For the sake of thoroughness, and because of the unsettled state of the case law, the

---

[8] The Second Circuit's suggestion in *Zhang* that a § 2255 petitioner alleging an unpreserved Rule 11 violation might have to show both that the violation was "a 'constitutional or jurisdictional' error" and "a reasonable probability that, but for the error, he would not have entered [his guilty] plea," 506 F.3d at 168, might appear to be in tension with the Supreme Court's dictum that its holdings "do not suggest that . . . a conviction [based on an unknowing or involuntary guilty plea] could be saved even by overwhelming evidence that the defendant would have pleaded guilty regardless." *Dominguez Benitez*, 542 U.S. at 84 n.10. The First Circuit confronted this possible tension in the context of a § 2255 petitioner's challenge to his sentence on the basis of an alleged Rule 11(b)(1)(N) violation. *See Sotirion*, 617 F.3d at 34. In *Sotirion*, the First Circuit recognized that the petitioner was essentially challenging the knowing and voluntary nature of the waiver of his right to collaterally attack his sentence, and suggested that the plain error standard only applied because the challenge to the waiver was "based on an unpreserved claim of Rule 11(b)(1)(N) error." *Id.* at 34 n.6 (quotation marks and citation omitted). The First Circuit explained that if a defendant "claim[ed] that his . . . waiver was not knowing and voluntary on grounds unrelated to compliance with Rule 11(b)(1)(N) . . . . [p]lain error review would not apply," even if the defendant had not raised his objection in the trial court. *Id.* Since the panel in *Sotirion* included Associate Justice David Souter, the author of the Supreme Court's opinions in both *Dominguez Benitez* and *Vonn*, the First Circuit's reasoning is particularly instructive.

Court also will evaluate whether Mr. Tellado has shown that the Court's alleged Rule 11 error affected Mr. Tellado's "substantial rights" and whether Mr. Tellado has demonstrated an error that "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Torrellas*, 455 F.3d at 103 (quotation marks and citations omitted).

**a.**

The Court first considers whether its failure to say the words "collateral attack" during Mr. Tellado's plea colloquy was plain error under Rule 11(b)(1)(N).

During Mr. Tellado's plea colloquy, the Court asked the prosecutor to summarize the terms of the plea agreement, and the prosecutor explicitly stated that the agreement included "a waiver of a right to appeal or rights of collateral attack." Plea Tr. at 23:14-15. The prosecutor then reiterated that "[t]he defendant has agreed to waive his rights of appeal or to collaterally attack the conviction or sentence imposed by the Court, as long as the sentence does not exceed 188 months." *Id.* at 23:16-19.

Although the Court itself did not mention specifically Mr. Tellado's waiver of his right to collaterally attack his sentence, immediately after the prosecutor explained the waiver of rights of appeal and collateral attack, the Court stated that it wanted to "focus [Mr. Tellado] in on this waiver." *Id.* at 23:21-22. The Court noted that with the waiver, Mr. Tellado was giving up his right to appeal his sentence "so long as [his] sentence [did] not exceed 188 months," even if he thought that the way the Court reached that sentence was wrong. *Id.* at 23:25-24:4. The Court stated that Mr. Tellado was giving up a "valuable right." *Id.* at 24:5. The Court then asked Mr. Tellado whether he had discussed the waiver with counsel and whether Mr. Tellado "was willing to give up [his] right to appeal, so long as [his sentence] did not exceed 188 months." *Id.* at 24:6-11. Mr. Tellado responded, "Yes." *Id.* at 12. The Court then asked Mr. Tellado's counsel, "[A]re

you satisfied that [the] waiver of appeal right is knowing and voluntary on your client's part?" *Id.* at 24:14-16. Mr. Tellado's counsel replied, "Yes, I am." *Id.* at 24:17.

Rule 11(b)(1)(N) requires only that "the court must address the defendant personally in open court," and "[d]uring th[at] address, inform the defendant of, and determine that the defendant understands . . . the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence." Nothing in Rule 11(b)(1)(N) suggests that in order to determine that the defendant understands a waiver of his right to collaterally attack his sentence, the Court itself must first summarize the waiver rather than delegate that task to the prosecutor. While the Court's advisement during the plea colloquy was "not as thorough or precise as it could have been" – and the Court regrets its omission – it was sufficient to confirm Mr. Tellado's "understanding that he was giving up the important right to challenge his sentence after his conviction." *Sotiron*, 617 F.3d at 35 (rejecting the appellant's argument "that the Rule 11 colloquy was inadequate because the magistrate judge did not separately discuss the waiver of his right to collaterally attack his sentence, as opposed to his right to a direct appeal"). Therefore, the Court does not believe that its omission during the plea colloquy constituted an error under Rule 11, let alone an error that is "clear or obvious." *Marcus*, 130 S. Ct. at 2164 (quotation marks and citation omitted).

**b.**

Even if the Court's failure to utter the magic words "collateral attack" constituted a technical error, however, the Court cannot conclude that its omission rendered Mr. Tellado's waiver of collateral attack rights unknowing or involuntary. "[A] defendant's promise in a plea agreement to forgo the right to appeal [or collaterally attack] a sentence" is enforceable only if "the record clearly demonstrates that the waiver was both knowing (in the sense that the

defendant fully understood the potential consequences of his waiver) and voluntary." *United States v. Monzon*, 359 F.3d 110, 116 (2d Cir. 2004) (quotation marks and citation omitted). In this case, nothing in the record suggests that Mr. Tellado's waiver of his right to collaterally attack his sentence was involuntary or that Mr. Tellado did not understand the potential consequences of the waiver.

In the written plea agreement itself, Mr. Tellado "expressly acknowledge[d]" that he was "waiving his . . . rights of collateral attack knowingly and voluntarily." Plea Agreement at 4. As already noted, the prosecutor specifically identified and summarized that provision during Mr. Tellado's plea colloquy. Before the prosecutor's summary of the terms of the agreement, the Court instructed that Mr. Tellado should "listen carefully to what [the prosecutor] says, because when he's finished, I'm going to ask you if you think he has accurately summarized what you understand to be the terms of your written Plea Agreement with the government." *Id.* at 19:19-23. After the prosecutor concluded his summary, the Court asked Mr. Tellado whether he had in fact heard the prosecutor's description of the plea agreement and whether it "fully and accurately describe[d] what [Mr. Tellado] believe[d] to be [his] agreement with the government." *Id.* at 24:23-25:4. Mr. Tellado responded "Yes." *Id.* at 25:5. In addition, as already noted, immediately after the prosecutor explained the waiver of rights of appeal and collateral attack, the Court stated that it wanted to "focus [Mr. Tellado] in on this waiver." *Id.* at 23:21-22. The Court then questioned Mr. Tellado and his attorney to confirm that Mr. Tellado "was willing to give up [his] right to appeal, so long as [his sentence] did not exceed 188 months." *Id.* at 24:6-11. Mr. Tellado and his attorney confirmed to the Court that Mr. Tellado waived that right knowingly and voluntarily.

During the plea colloquy, the Court also asked Mr. Tellado whether he was pleading guilty "voluntarily and of [his] own free will, and because [he was], in fact, guilty," and Mr. Tellado replied, "Yes." *Id.* at 25:24-26:2. The Court then asked: "Do you understand that if you do plead guilty and I accept your plea, I'll make a finding that you are guilty of this offense, and on the basis of that . . . guilty plea, I will ultimately sentence you, after considering a Presentence Report?" *Id.* at 26:3-8. Mr. Tellado replied, "Yes." *Id.* at 9. The Court had Mr. Tellado confirm that the signature on the plea agreement was his own and asked Mr. Tellado whether he had signed the plea agreement "freely and voluntarily." *Id.* at 27:11-15. Mr. Tellado replied, "Yes." *Id.* at 27:16. At the end of the plea colloquy, the Court said to Mr. Tellado: "Mr. Tellado, based upon everything I have seen and heard today, it appears to me that you want to plead guilty because you are, in fact, guilty, and you choose to plead guilty freely and voluntarily. Is that your position, sir?" *Id.* at 40:12-17. Mr. Tellado replied, "Yes, Your Honor." *Id.* at 40:18.

Finally, the record reflects that the Court asked Mr. Tellado whether he had "read carefully[] all of the pages of [the] written Plea Agreement" and that Mr. Tellado replied, "Yes, I did." *Id.* at 18:10-12. Mr. Tellado also confirmed that he had discussed the plea agreement thoroughly with his counsel and that he felt that he understood the terms of the agreement. *Id.* at 18:14-20. Moreover, Mr. Tellado's counsel stated that he had discussed the terms of the written plea agreement with Mr. Tellado and told the Court that he was satisfied that his client understood the terms. *Id.* at 19:6-15. It should be noted that at Mr. Tellado's sentencing hearing, the Court did explicitly note that in the plea agreement, Mr. Tellado had waived his "right to appeal *or collaterally attack* [his] sentence so long as it did not exceed 188 months," Sentencing Tr. at 32:3-6 (emphasis added), and Mr. Tellado did not object or ask to withdraw his plea.

Mr. Tellado has not subsequently affirmed or testified under oath that he was unaware of or did not understand the waiver of collateral attack rights in his plea agreement, nor has he asserted that point directly and explicitly in his § 2255 petition or in any of his briefs. But to the extent Mr. Tellado *hints* that the waiver of collateral attack rights in his plea agreement was involuntary or unknowing because he was not aware of or did not understand the waiver, *see* Movant's Mem. Re: Timeliness and Waiver [doc. # 19] at 22, the Court finds no support for that proposition in the record. *See Monzon*, 359 F.3d at 116 (rejecting defendant's claim that her appeal waiver was unknowing because "there [was] nothing in the transcript of [the] plea allocution to support her contention that she did not understand [the terms of the appeal waiver]"). The fact that Mr. Tellado "did not claim[] in his § 2255 motion[] that he had not understood the waiver in his plea agreement," *Garcia-Santos v. United States*, 273 F.3d 506, 508 (2d Cir. 2001) (per curiam), along with Mr. Tellado's signed plea agreement, Mr. Tellado's statements at his plea allocution, and Mr. Tellado's failure to seek to withdraw his plea, all support the conclusion that Mr. Tellado's "plea agreement was entered into knowingly and voluntarily, and with awareness of his waiver of . . . collateral attack [rights]." *Id.* (affirming the district court's conclusion that a § 2255 petitioner's waiver of appeal and collateral attack rights was knowing and voluntary, despite the fact that "[t]he defendant was not asked about and did not specifically address the waiver" during the plea allocution); *see also United States v. Castillo*, 303 F. App'x 989, 991 (2d Cir. 2008) (summary order) (finding that "nothing in the record" suggested the defendant misunderstood the terms of an appeal waiver, despite the fact that the district court's description of the waiver "was no model of clarity," where the court had "confirmed, as a general matter, that [the defendant] read and understood the agreement" and "[t]he specific terms of the . . . waiver were made clear . . . at the sentencing stage, [yet the

defendant] did not object or attempt to withdraw his guilty plea"). In sum, it is clear from the record that Mr. Tellado knowingly and voluntarily waived his right to collaterally attack his sentence.

The cases in which the Second Circuit has concluded that the record failed to demonstrate that an appeal waiver was knowing and voluntary involved factors such as a failure by the court to explicitly call the waiver to the defendant's attention at the plea allocution or to inquire as to the defendant's understanding of it, *see United States v. Tang*, 214 F.3d 365, 368 (2d Cir. 2000); a failure by the court to identify the disputed waiver as part of the plea agreement or even to ask the defendant whether he read the agreement, along with an absence of any "affirmative evidence from which [the defendant's] knowledge and understanding of the waiver provision could be reasonably inferred," *United States v. Chen*, 127 F.3d 286, 289-290 (2d Cir. 1997); a failure by the court "specifically to flag the sentencing appeal waiver" along with a positive statement by the court implying that the defendant "retained at least a limited right to appeal his sentence" *and* a failure by the government or defense counsel to correct that statement, *United States v. Mitchell*, 303 F. App'x 28, 29 (2d Cir. 2008) (summary order); and an incorrect statement by the court – a statement in conflict with the written plea agreement – that the waiver did not apply to an "illegal sentence," *United States v. Ready*, 82 F.3d 551, 557 (2d Cir. 1996). Those cases are all easily distinguishable from Mr. Tellado's.

**c.**

The Court also cannot conclude that its omission during the plea colloquy affected Mr. Tellado's substantial rights, especially since the Court's statements regarding the waiver of appeal and collateral attack rights did not in any way conflict with or contradict the terms of the written waiver – a waiver that Mr. Tellado stated he had read and understood and which the prosecutor

summarized in open court on behalf of the Court during the plea colloquy. As already noted, the Court corrected its earlier omission at Mr. Tellado's sentencing hearing, and Mr. Tellado did not object to the Court's statement that he had waived his "right to appeal or collaterally attack" his sentence. Sentencing Tr. at 32:4-5. Nor did Mr. Tellado ask to withdraw his plea. In sum, Mr. Tellado cannot show a "reasonable probability" that, but for the Court's failure to repeat the prosecutor's statement during the plea colloquy that Mr. Tellado had agreed to waive rights of collateral attack, Mr. Tellado would not have entered his guilty plea. *Dominguez Benitez*, 542 U.S. at 83.

Indeed, Mr. Tellado has not even attempted to argue that, but for the Court's alleged Rule 11 error, he would not have entered a guilty plea. Nor, for that matter, has he asserted that the Court's alleged error "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Marcus*, 130 S. Ct. at 2164 (quotation marks, alteration, and citation omitted); *see Vonn*, 535 U.S. at 63; *Torrellas*, 455 F.3d at 103. Thus, the Court's omission during the plea colloquy – even if it constituted a technical Rule 11 error – did not render Mr. Tellado's waiver of collateral attack rights unenforceable.

### 2.

To the extent that Mr. Tellado argues that his waiver of collateral attack rights should be deemed unknowing and unenforceable regardless of the Court's alleged Rule 11 violation because the waiver was based on the "false premise" that his prior convictions supported a career offender designation, Movant's Mem. Re: Timeliness and Waiver [doc. # 29] at 28, his argument is without merit. A defendant's inability to anticipate changes to the sentencing law does not render a waiver of appeal or collateral attack rights unknowing. *See United States v. Morgan*, 406 F.3d 135, 137 (2d Cir. 2005) ("[A defendant's] inability to foresee that subsequently decided

cases would create new appeal issues does not supply a basis for failing to enforce an appeal waiver. On the contrary, the possibility of a favorable change in the law after a plea is simply one of the risks that accompanies pleas and plea agreements."); *Garcia-Santos*, 273 F.3d at 509 ("We have long enforced waivers of direct appeal rights in plea agreements, even though the grounds for appeal arose after the plea agreement was entered into. The reasons for enforcing waivers of direct appeal in such cases lead us to the same conclusion as to waivers of collateral attack under § 2255." (citation omitted)).

## B.

For the reasons already discussed, Mr. Tellado has not stated a credible claim that he is "actually innocent." Therefore, his waiver of his right to collaterally attack his sentence cannot be deemed unenforceable on that basis. Insofar as Mr. Tellado's argument that his waiver should not be enforced because he is "actually innocent" of being a career offender is really an argument that the Court should nullify the waiver on the basis of a subsequent development in the law, the Second Circuit has rejected that possibility. As the Court has just noted, where legal conditions change subsequent to a plea agreement, "the possibility that the parties might have bargained differently . . . is simply not relevant to whether [a] plea agreement is enforceable." *Roque*, 421 F.3d at 123; *see, e.g.*, *United States v. Lee*, 523 F.3d 104, 107 (2d Cir. 2008) (holding that "neither [*Kimbrough v. United States*, 128 S. Ct. 558 (2007),] nor any other legal 'developments' constitute[d] grounds for finding [the defendant's] appeal waiver unenforceable").

Mr. Tellado's waiver of his right to collaterally attack his sentence remains valid and enforceable.

# III.

On May 13, 2011, Mr. Tellado filed a Motion to Amend [doc. # 30] his § 2255 petition. Mr. Tellado's Proposed Amended Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 [doc. # 31] includes the claim asserted in Mr. Tellado's original petition, as well as an ineffective assistance of counsel claim. That ineffective assistance of counsel claim asserts that Mr. Tellado's trial counsel, Attorney Arnold V. Amore, provided ineffective assistance because he did not "challeng[e] the use of Mr. Tellado's prior convictions to establish his career offender status." Proposed Amended Mot. to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 [doc. # 31] at 3. Mr. Tellado asserts that his attorney's performance thus "fell below the range of competence demanded by attorneys." *Id.* In response to Mr. Tellado's Motion to Amend, the Government argues that "[e]ven if amended, [Mr. Tellado's] petition would remain untimely and therefore [be] barred by the statute of limitation, and it would remain barred by [Mr. Tellado's] waiver in his plea agreement of his collateral attack rights." Mem. in Opp'n to Mot. to Amend [doc. # 36] at 1. In addition, the Government argues that Mr. Tellado's ineffective assistance of counsel claim would fail on the merits.

The Court agrees that amendment of Mr. Tellado's petition would be futile.

First, as the Court has already explained, Mr. Tellado's petition was filed outside AEDPA's one-year limitations period, and no exception to the statute of limitations applies. Thus, Mr. Tellado's ineffective assistance of counsel claim, like his original claim, would be untimely. The Court need not decide whether Mr. Tellado's proposed amendment relates back to the date of his original petition under Rule 15(c)(1)(B) of the *Federal Rules of Civil Procedure*.

Second, as part of his plea agreement, Mr. Tellado waived his right to appeal or collaterally attack his sentence. An ineffective assistance of counsel claim survives a defendant's

waiver of his right to collaterally attack his sentence "only where the claim concerns the advice the defendant received from counsel." *Parisi v. United States*, 529 F.3d 134, 138 (2d Cir. 2008) (quotation marks, alteration, and citation omitted). "[C]hallenging the attorney's role in shaping the defendant's bargaining position cannot avoid the waiver." *Id.* at 138-39. The waiver can be avoided only by "challenging the attorney's *advice* about that bargaining position, by connecting the knowing and voluntary nature of the defendant's plea decision with the attorney's conduct." *Id.* at 139 (emphasis in original). In other words, "a waiver of . . . collateral attack rights does not foreclose an attack on the validity of the process by which the waiver [was] procured, [such as] a plea agreement." *Frederick v. Warden*, 308 F.3d 192, 195 (2d Cir. 2002).

Mr. Tellado's proposed amended petition does not assert that Mr. Tellado's counsel was ineffective because of his advice to Mr. Tellado regarding the plea agreement, and only a few of the new "Supporting Facts" alleged in that proposed amended petition even make reference to Mr. Tellado's plea agreement. Specifically, Mr. Tellado alleges that his counsel "negotiated a plea agreement specifying that Mr. Tellado was a career offender under the federal sentencing guidelines," that counsel "represented Mr. Tellado at his plea and sentencing where [counsel] did not object to Mr. Tellado's purported career offender status," and that "the statutory provisions and case law necessary to [challenge the use of Mr. Tellado's prior convictions to establish his career offender status] were in existence prior to Mr. Tellado's plea and sentencing." Proposed Amended Mot. to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 [doc. # 31] at 3. In addition, in his Memorandum in Support [doc. # 32] of his Motion to Amend, Mr. Tellado does not argue that his waiver of his right to collaterally attack his sentence was unknowing or involuntary because of advice he received from his counsel. At most, he takes issue with his counsel's general "failure to conduct[] a comparison of the elements of [Mr.

Tellado's] prior state offenses to the definitions contained in the career offender guidelines." Mem. in Supp. of Mot. to Amend [doc. # 32] at 2.

In fact, the basis for Mr. Tellado's ineffective assistance of counsel claim seems to be that his counsel failed to argue to the Court that Mr. Tellado's prior convictions did not support a career offender designation. The ineffective assistance of counsel claim that Mr. Tellado seeks to add to his petition reads as follows:

> Shawn Tellado received ineffective assistance of counsel in his federal criminal case styled *United States v. Colon, et al.*, 3:06cr269 (MRK), and said ineffective assistance of counsel resulted in prejudice to Mr. Tellado in that he was wrongly sentenced as a career offender and accordingly received a sentence in violation of the laws and Constitution of the United States.

Proposed Amended § 2255 Pet. [doc. # 31] at 2. Most of the "Supporting Facts" Mr. Tellado alleges in support of that claim regard his sentencing. *See id.* at 2-3. Indeed, in his Memorandum in Support of the Motion to Amend, Mr. Tellado states explicitly that his ineffective assistance of counsel claim is that "counsel did not provide adequate representation at sentencing." Mem. in Supp. of Mot. to Amend [doc. # 32] at 2.

The Second Circuit has held that a defendant cannot avoid a waiver of appeal or collateral attack rights by "dress[ing] up" a challenge to his sentence as "a violation of the Sixth Amendment." *United States v. Djelevic*, 161 F.3d 104, 107 (2d Cir. 1998) (per curiam) ("If we were to allow a claim of ineffective assistance of counsel at sentencing as a means of circumventing plain language in a waiver agreement, the waiver of appeal provision would be rendered meaningless."). Mr. Tellado's argument that his counsel was ineffective for failing to object to his designation as a career offender at sentencing is not viable in light of the waiver in his plea agreement.

Third, even if the Court construed Mr. Tellado's ineffective assistance of counsel claim to challenge his attorney's advice regarding the plea agreement, the claim would fail. "[T]he proper standard for attorney performance is that of reasonably effective assistance." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under *Strickland*, a defendant asserting a claim for ineffective assistance of counsel must establish both (1) that his counsel's performance "fell below an objective standard of reasonableness" and (2) that his counsel's unprofessional errors actually prejudiced the defense. *Id.* at 687-88. Moreover, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. As the Supreme Court recently emphasized, "strict adherence to the *Strickland* standard [is] all the more essential when reviewing the choices an attorney made at the plea bargain stage." *Premo v. Moore*, --- U.S. ---, 131 S. Ct. 733, 741 (2011).

In this case, while Mr. Tellado's trial counsel *could* have challenged the Government's presumption that Mr. Tellado was a career offender under the Guidelines and advised Mr. Tellado not to sign a plea agreement that incorporated that presumption, there was no "manifest deficiency" in counsel's performance "in light of [the] information then available to counsel." *Id.* While the legal building blocks of the Second Circuit's decision in *Savage* existed at that time Mr. Tellado entered his guilty plea, the simple fact is that *Savage* was not yet controlling case law. Mr. Tellado himself has emphasized that "until *Savage* was decided it had always been the case in Connecticut that convictions for violating Conn. Gen. Stat. § 21a-277(a), whether derived from *Alford* pleas or not, counted as career offender predicates." Movant's Mem. Re: Timeliness and Waiver [doc. # 19] at 13. Indeed, Mr. Tellado previously argued that "a reasonable attorney would not be expected to have raised a *Savage*-type claim prior to the publication of the Second

Circuit's opinion in *Savage*." Movant's Supplemental Mem. Re: Timeliness and Waiver [doc. # 22] at 7. The Court agrees.

Evaluating counsel's "conduct from counsel's perspective at the time," *Strickland*, 466 U.S. at 689, the Court finds no basis to doubt that counsel's advice to Mr. Tellado regarding the plea agreement was "reasonable[] under prevailing professional norms," *id.* at 688; *see Parisi*, 529 F.3d at 141 (explaining that "[u]nder *Strickland*, [a court] must consider the circumstances counsel faced at the time of the relevant conduct" (quotation marks and citation omitted)); *Sellan v. Kuhlman*, 261 F.3d 303, 315 (2d Cir. 2001) ("An attorney is not required to forecast changes or advances in the law." (quotation marks and citation omitted)). Therefore, even construed generously, Mr. Tellado's ineffective assistance of counsel claim could not succeed on the merits.

Because amendment of Mr. Tellado's petition would be futile, the Court **DENIES** the Motion to Amend [doc. # 30]. *See Littlejohn v. Artuz*, 271 F.3d 360, 363 (2d Cir. 2001) ("[T]he standard for granting or denying a motion to amend [a habeas petition] is . . . governed by Federal Rule of Civil Procedure 15(a)."); *Jones v. N.Y. State Div. of Military & Naval Affairs*, 166 F.3d 45, 50 (2d Cir. 1998) ("[A] district court may properly deny leave [to amend under Rule 15(a)] when amendment would be futile.").

## IV.

For the foregoing reasons, Mr. Tellado's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 [doc. # 1] is **DENIED.**

The remaining issue is whether to grant a certificate of appealability ("COA"). The Supreme Court has stated:

> When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue (and

an appeal of the district court's order may be taken) if the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court is confident that Mr. Tellado's § 2255 petition is time-barred and that his waiver of his right to collaterally attack his sentence is valid and enforceable. Nonetheless, Mr. Tellado's equitable tolling argument is not one that the Second Circuit has squarely addressed, and the applicability of equitable tolling must be determined on a case-by-case basis. In addition, it appears that reasonable jurists disagree about the precise standard of review for unpreserved Rule 11(b)(1)(N) claims. The Second Circuit has not yet explained how the plain error standard should be applied to alleged violations of Rule 11(b)(1)(N) on direct appeal, let alone in § 2255 proceedings. Finally, while this Court is highly skeptical of the ineffective assistance of counsel claim in Mr. Tellado's proposed amended petition, reasonable jurists might find it debatable whether an attorney's advice to Mr. Tellado to accept a plea agreement in which Mr. Tellado agreed to be sentenced as a career offender could have "amounted to constitutionally deficient performance." *Gonzalez v. United States*, No. 10-1028-cv, 2011 WL 2006674, at *1 (2d Cir. May 24, 2011) (summary order) (declining to decide whether an attorney's failure to challenge a predicate conviction "based on [the Second Circuit's] subsequent reasoning in *Savage* amounted to constitutionally deficient performance"). In sum, the Court believes that Mr. Tellado has sufficiently demonstrated "that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner" or "[could conclude] that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quotation marks and citation omitted).

Therefore, the Court will issue a COA limited to three issues: (1) whether Mr. Tellado might be entitled to equitable tolling under AEDPA; (2) whether the Court applied the correct standard and reached the correct conclusion in its assessment of the Rule 11(b)(1)(N) error alleged by Mr. Tellado; and (3) whether advice from Mr. Tellado's attorney to accept the terms of the plea agreement in this case could rise to the level of ineffective assistance of counsel under the Sixth Amendment to the United States Constitution and render Mr. Tellado's waiver of his rights of collateral attack unknowing or involuntary.

If Mr. Tellado wishes to appeal this ruling, he must file his Notice of Appeal no later than thirty (30) days from the date on which judgment is entered. *See* Fed. R. App. P. 4(a). The Court directs Mr. Tellado's court-appointed attorney to file an appeal on Mr. Tellado's behalf if Mr. Tellado wishes to appeal this Court's ruling.

**The Clerk is directed to enter judgment for Respondent and to close this file.**

IT IS SO ORDERED.


/s/ ____Mark R. Kravitz_____
United States District Judge


**Dated at New Haven, Connecticut: July 13, 2011.**